THE STATE, THE LEHIGH AND WILKESBARRE COAL COMPANY, PROSECUTORS, v. CARRIGAN, COLLECTOR OF BAYONNE.

A foreign corporation, whose business is the mining of coal in Pennsylvania, which is sent by railroad across this state to tide-water for shipment to customers in other states, and whose office for receiving

orders for coal and transacting its business, is in New York city. *Held*—

1. That such corporation is not taxable on coal lying on its dock, which is delayed within this state, awaiting shipment to other states.
2. That such corporation is not taxable on coal shipped direct from its mines and delivered in this state, in cars, to local dealers, on orders transmitted through its office in New York city.

On *certiorari*.   In matter of taxation.

Argued at June Term, 1876, before Justices DEPUE, VAN SYCKEL and KNAPP.

For the prosecutors, *W. S. Whitehead*.

For the defendant, *E. A. S. Man*.

The opinion of the court was delivered by

DEPUE, J.   The prosecutors are a foreign corporation engaged in mining coal in the Wyoming valley, in the State of Pennsylvania, which is transported over the Central railroad to tide-water at Port Johnson, in the county of Hudson, where it is deposited on the dock for re-shipment to New York, the eastern states and wherever it may be sold in other states.

The office of the company is in the city of New York. The company has no office at Port Johnson for the sale of coal.   The agent in charge there has orders not to sell any coal or receive money for coal.   The business is transacted exclusively through the New York office.

Before the coal is sent from the mines, it is contracted for, to be delivered by the prosecutors on board vessels at Port Johnson, and remains on the dock no longer than is necessary to obtain vessels to transport it.   The quantity of coal delivered in this way, in the course of a year, amounts to about one million five hundred thousand tons.

The assessment complained of was on a valuation of $50,000, on which a tax of $1,100 was laid.   The assessor

testified that he made the assessment on the coal on the docks —lying on the docks and in bins on the dock—that he estimated the quantity of coal, at that time, at fifty thousand tons, and took an estimate from an average of from ten thousand to twelve thousand tons throughout the year, and obtained his valuation for taxation on that basis.

The tax, in fact, was laid upon property in the course of transit across the state. In *State, Detmold and Cox, pros.,* v. *Engle,* 5 *Vroom* 425, this court held that the property of citizens of another state sent across this state to market in other states, and delayed within this state merely for shipment, has no *situs* within this state for the purpose of taxation. The transportation of property is a constituent part of commerce, and a tax upon such property in its transportation from state to state, is a regulation of commerce among the states, and cannot constitutionally be imposed under state authority. *Case of State Freight Tax,* 15 *Wall.* 232; *Erie R. R. Co.* v. *Pennsylvania, Id.* 282; *The Erie Railway Co.* v. *The State,* 2 *Vroom* 531. The mode in which the tax is laid, whether it be directly on the property in the hands of the owner, or on the carrier, as a tax on his business, is immaterial. In *Erie Railway Co.* v. *The State,* 2 *Vroom* 531, Chief Justice Beasley assumes that a tax directly on property in its transit across the state, would be a form of taxation "undeniably unconstitutional." From this premise, he argues that taxation of the carrier for the transportation of such property, is also unconstitutional, because of the "substantial identity in the results."

It was contended that this assessment might be sustained, on the ground that the prosecutors are engaged in the business of selling coal at Port Johnson, and that the coal for which they were assessed, was part of their stock with which that business was conducted.

The testimony does not sustain this position. The proof is, that the company does not make sales to local coal dealers or customers, from their stock on hand. The extent of its business in the state is this: that in the course of a year,

about fifty tons of·coal in a damaged condition, picked up on¹ the piers, are sold to its employés for consumption for· domestic use, and about fifty cars loaded with coal are deliv- ered annually to local dealers at Port Johnson.

The coal delivered in cars to local dealers and others at: Port Johnson, is ordered through the New York office, and shipped directly from the mines, and is delivered from cars· left on the track or sidings for immediate removal. Those· transactions are described as exceptional, and are shown to be· so by the small amount of the sales in this way as compared. with the entire business of the company. In every other re-- spect, except delivery in the state, the business is transacted. out of the state. A tax upon freight taken up without· the· state and brought within it, is equally repugnant to the con- stitutional provision with a tax on freight carried across the· state. *Case of State Freight Tax*, 15 *Wall*. 232.

The assessment should be set aside, with costs.